## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DR. TRAVIS MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) C.A. No. 2018-0762-SG | |
| | ) | |
| HARBOR DIVERSIFIED, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: November 22, 2019
Date Decided: February 5, 2020

Thaddeus J. Weaver, of DILWORTH PAXON LLP, Wilmington, Delaware; OF COUNSEL: Catherine Pratsinakis of DILWORTH PAXON LLP, Philadelphia, Pennsylvania, *Attorneys for Plaintiff Dr. Travis Martin*.

Peter J. Walsh, Jr. and David A. Seal, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; OF COUNSEL: Marc J. Schneider and Stephen L. Ram, of STRADLING YOCCA CARLSON & RAUTH, P.C., Newport Beach, California, *Attorneys for Defendant Harbor Diversified, Inc*.

GLASSCOCK, Vice Chancellor

This matter is before me on the Plaintiff's Petition for Attorney's Fees and Expenses (the "Petition"). Delaware follows the American Rule on legal fees; each party bears his own. Exceptions to the rule are recognized. One exists where a member of a group or class acts to achieve a benefit shared by the class; in such cases, equity may require that the class share the burden as well as the benefit of the legal action.[1] This exception has various applications; the pertinent one here is the corporate benefit doctrine, under which, where an entity and its stockholders benefit from a legal action, sharing the costs—including legal fees—may be warranted. Where equity so requires, that sharing is enforceable by court order, and is routine. The exercise of equity in this regard must be tempered, however, in recognition that the entity and its owners are being asked to pay for litigation they did not themselves choose to undertake, and should not be required to underwrite actions untethered to the corporate interest. The resulting balance of equities forms the major issue before me here.

The Plaintiff has been a stockholder in Defendant Harbor Diversified, Inc. ("Harbor") since 2010.[2] Harbor is a once-public Delaware corporation that suspended its duty to file reports under Section 13 and 15(d) of the Securities Exchange Act of 1934 in January 2012.[3] Before this Action was filed, Harbor last

---

[1] *See Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 506 (Del. 2005).
[2] Pretrial Stipulation and Order, D.I. 39 ("PTSO"), ¶ 1.
[3] *Id.* ¶¶ 2, 15.

held a stockholder meeting on October 26, 2011.[4] On October 22, 2018 the Plaintiff filed this Action under Section 220 of the Delaware General Corporation Law[5] ("DGCL") to inspect books and records, and Section 211 of the DGCL[6] to compel an annual stockholder's meeting.[7] The Plaintiff later filed an amended complaint (the "Amended Complaint"), similarly seeking relief under Sections 211 and 220, on January 15, 2019.[8] I held a trial on a paper record on April 23, 2019, after which I ordered Harbor to hold an annual meeting and granted certain of the Plaintiff's document requests.[9] The annual meeting, of course, is necessary to the exercise of the corporate franchise, which is a fundamental stockholder right.

Post-trial, the Plaintiff has sought $673,691 in attorney's fees and expenses, invoking two grounds to depart from the American Rule on fees: corporate benefit and bad faith. The Plaintiff has submitted that his actions conferred a corporate benefit on Harbor by "compelling an annual meeting and providing Harbor stockholders director elections after nearly eight years of darkness,"[10] and forcing Harbor's disclosure of its "ownership structure, the identities of management and directors, the existence of its ownership interest in Air Wisconsin and Lotus

---

[4] *Id.* ¶ 37.
[5] 8 *Del. C.* § 220.
[6] 8 *Del. C.* § 211.
[7] PTSO, ¶ 26; Verified Stockholder Compl. for Books and Records, D.I. 1.
[8] First Amended Verified Stockholder Compl., D.I. 9.
[9] Trial Transcript ("Trial Tr.") 48:12–51:8, 95:9–100:16.
[10] Pl.'s Am. Opening Br. in Supp. Of Pet. For Att'ys Fees and Expenses, D.I. 62 ("Pl.'s Opening Br."), at 8.

Aviation, [and] related-party dealings . . . ."[11]  The Plaintiff also alleges bad faith litigation by Harbor and its California-based counsel.[12]  Shifting fees for bad faith is not, properly speaking, an exception to the American Rule on fees; it is a method for reducing and appropriately allocating the costs of vexatious behavior sufficiently serious that justice requires such mitigation.  Allegations of bad faith here, I find, are misplaced—I address them briefly after discussing the fee request under the corporate benefit doctrine.

The corporate benefit doctrine compensates a litigant for fees and expenses where litigation it pursued conferred a non-monetary valuable benefit upon the corporate enterprise or its stockholders.[13]  The purpose animating the doctrine "is to balance the equities to prevent 'persons who obtain the benefit of a lawsuit without contributing to its cost [from being] unjustly enriched at the successful litigant's expense.'"[14]  The corporate benefit doctrine is an equitable subspecies of the general common benefit doctrine, under which a litigant is eligible for fees and expenses if "(a) the action was meritorious at the time it was filed, (b) an ascertainable group

---

[11] *Id*. at 9.

[12] *Id*. at 10–12.

[13] *Dover Historical Soc., Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1090 (Del. 2006).  Where a litigant has conferred a monetary benefit, the application for fees and expenses is analyzed under the "common fund" exception.  *Id*.

[14] *Id*. (quoting *Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1044 (Del. 1996)).

3

received a substantial benefit, and (c) a causal connection existed between the litigation and the benefit."[15]

"Eligible" is not synonymous with "entitled," and "the granting of a fee award is not automatic just because the three basic elements of the corporate benefit doctrine have been satisfied."[16] In other words, satisfying the three elements is necessary but not sufficient to obtain attorney's fees.[17] "This is because the corporate benefit doctrine is rooted in the application of equitable principles, and there are circumstances where it would be inappropriate or inequitable to award attorneys' fees even when the basic elements of the doctrine ostensibly have been satisfied."[18] This is such a case.[19]

The principle underlying the corporate benefit doctrine is that equity should not tolerate unjust enrichment and impoverishment, or free riders; stockholders who benefit from the litigious efforts of another on their behalf should share in the

---

[15] *Id*. at 1089.

[16] *Almond as Tr. for Almond Family 2001 Tr. v. Glenhill Advisors LLC*, 2019 WL 1556230, at *5 (Del. Ch. Apr. 10, 2019).

[17] *Id*. (citing *In re Orchard Enters. Inc. S'holders Litig.*, 2014 WL 4181912, at *3 (Del. Ch. Aug. 22, 2014)).

[18] *Id*. (internal citations omitted). *See also Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1166 (Del. 1989) ("The standard which governs the allowance of counsel fees in equity is not inclusive of all occasions when such fees may be sought. The concept is a flexible one based on the historic power of the Court of Chancery to do equity in particular situations.").

[19] I note that Harbor contends that fees and expenses are not warranted in part because "this Court has *never* awarded feeds for a Section 211 claim." Def.'s Answering Br. in Opp'n to Pl.'s Opening Br. in Supp. Of Pet. for Att'ys Fees, D.I. 73 ("Def.'s Answ. Br."), at 8 (emphasis added). Equity generally avoids bright line rules, in favor of consideration of facts pertinent to the immediate situation under review.

reasonable costs incurred thereby.[20]  Stockholders should not, however, be compelled to share the costs of the litigious effort of a fellow stockholder, where that stockholder has pursued an action in her own interest, and, having failed in that endeavor, seeks coerced reimbursement; such forced contribution is clearly inequitable.  This case exists between these poles, but, I find, is closer to the latter.

Upon review of the record, it is clear to me that the Plaintiff initiated and pursued this action in his personal interest, in large part in an effort to be bought out of his ownership stake in Harbor.  This is evident from the March 5, 2018 pre-suit books and records demand letter, which states as its purpose "to obtain information regarding the value of Mr. Martin's Harbor common stock" and "to obtain information regarding the value of assets and interests held by [Harbor] and its subsidiaries."[21]  While the demand letter makes reference to the fact that Harbor had not had a stockholder meeting since October 26, 2011, there is no *demand* to hold a meeting.[22]

---

[20] *Louisiana State Employees' Ret. Sys. v. Citrix Sys., Inc.*, 2001 WL 1131364, at *4 (Del. Ch. Sept. 19, 2001) (citing *United Vanguard Fund, Inc. v. Takecare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997)).

[21] PTSO, ¶ 20; JX 1, at 4.  The letter also stated three more purposes: (1) to communicate with other shareholders of Harbor, (2) to investigate possible wrongdoing including breaches of fiduciary duties of Harbor fiduciaries, including directors and officers of Harbor, and (3) to investigate the facts relevant to whether pre-suit demand upon the Harbor Board is excused to initiate and maintain derivative litigation against officers and directors of Harbor and potentially others.  JX 1, at 4.  I note that none of these purposes relate to a lack of an annual stockholder meeting.

[22] JX 1, at 4.

After negotiations between Plaintiff's counsel and Harbor's counsel regarding books and records demands, the Plaintiff filed a complaint on October 22, 2018 (the "Initial Complaint")—only at this point did the Plaintiff demand an annual meeting.[23] Plaintiff filed a second demand for books and records on November 6, 2018.[24]

Plaintiff's counsel and Harbor's counsel met on September 26, 2018, *before* the Plaintiff filed the Initial Complaint.[25] Richard Bartlett, a director of Harbor, also attended the meeting on behalf of Harbor.[26] In a letter to Harbor's counsel sent *after* the Initial Complaint was filed, Plaintiff's counsel noted: "[d]uring the September 26th meeting, Mr. Bartlett rejected the idea of a global buyout . . . [w]e would appreciate clarity on whether a global buy-out is of actual interest to Bartlett and his colleagues, and when such transaction would take place. Otherwise, we need to move on to other prospective buyers."[27] This is consistent with an individual motive for the litigation, and not a motive to benefit the corporate entity or its stockholders. The Plaintiff never sought class representation in this matter, even though the Plaintiff apparently advocated a buyout of other unaffiliated stockholders.[28]

---

[23] Verified Stockholder Compl. for Books and Records, D.I. 1. As noted above, the Plaintiff later filed the Amended Complaint.

[24] PTSO, ¶ 28.

[25] JX 88, at 1.

[26] *Id*. at 1–2; JX 86, at 2.

[27] JX 88, at 1–2.

[28] Even if the Plaintiff were acting for the benefit of the other unaffiliated stockholders in negotiating a buyout, the Plaintiff has not submitted that such actions conferred a corporate benefit.

Plaintiff's counsel sent another letter to Harbor's counsel on January 18, 2019, which noted, "[f]or several months we have been discussing the appropriate scope of information that would satisfy the outstanding [Section] 220 Demands. We have also been discussing the possibility of a buy-out of [Harbor's] unaffiliated shareholders."[29] The bulk of the information requested by Plaintiff's counsel in that letter concerned valuation of Harbor.[30] The "Valuation" requests began as follows: "[a]fter speaking with my team, we have concluded that additional information will be necessary to value the shares. We cannot commence buy-out negotiations this month (as you suggested) unless and until we have the information below which is necessary to value a regional airline."[31]

The type of financial information Plaintiff sought is exemplified in a March 5, 2019 letter from Plaintiff's counsel to Harbor's counsel:

- "Copies of the schedules and pro forma cash flow information provided to the creditors of [Harbor] . . ."[32]

---

Instead, the Petition cites only the stockholder meeting and disclosures about Harbor as purported corporate benefits. Plaintiff's counsel did note at Oral Argument that Mr. Martin felt it a matter of honor to try to get global relief through a buyout: "we said, No, thank you. This is about global relief. Either become a good corporate steward or provide us either the ability to sell our shares for a fair price back to the company or to a third party." Oral Arg. Tr. 42:20–47:7. The Plaintiff, however, has not suggested such championing of the interests of the stockholder class serves as a basis for a fee award.

[29] JX 90, at 1.

[30] Plaintiff's counsel also requested information on "Qualifying Transaction & Related Party Dealings" and a Stockholder List. *Id*. at 4–5.

[31] *Id*. at 1.

[32] JX 93, at 1.

- "Copies of income forecasts established within the last twelve months for wholly owned subsidiaries Air Wisconsin Airlines Corp ("AirWis") and Lotus Aviation Leasing, LLC ("Lotus") . . ."[33]

- "Copies of internal budgets prepared for AirWis from 2017 to present . . ."[34]

- "Copies of internal budgets prepared for Lotus from 2017 to present . . ."[35]

The letter also requests other information such as communications with auditors and regulators. The Plaintiff made a third written document demand on Harbor on March 20, 2019.[36] The activity described above related primarily to the Plaintiff's interest in selling his shares.

The fact that the Plaintiff had a personal motive in bringing the litigation is not fatal to a request for fees under the corporate benefit doctrine. In *Kurz v. Holbrook*,[37] on a petition for attorney's fees after a successful request for relief under Section 225 of the DGCL[38]—regarding the election of directors—this Court "rejected the argument that plaintiffs were not entitled to a fee award on the theory

---

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] PTSO, ¶ 31.
[37] *Kurz v. Holbrook*, C.A. No. 5019, at 17–18 (Del. Ch. July 19, 2010) (TRANSCRIPT), *aff'd sub nom. EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429 (Del. 2012).
[38] 8 *Del. C.* § 225.

that they initiated the litigation purely for personal reasons and did not provide any benefit to [the company] and all of its stockholders."[39]  Our Supreme Court affirmed in *EMAK Worldwide, Inc. v. Kurz*, and explained that "[p]reserving shareholder voting rights produces a fundamental corporate benefit."[40]  However, that case involved a "long, back-and-forth control dispute" between the common and preferred shareholders of the entity.[41]  Neither this Court, nor our Supreme Court, suggested that the ends the plaintiffs pursued there, however personal their motivation, were not aligned with and in furtherance of the interests of the entity and its stockholders.

Here, I decline to grant the Petition because, to my mind, it would be inequitable to grant fees to the Plaintiff where it is clear that the corporate benefit was a mere externality to the Plaintiff's ultimate goal of achieving a buyout of his interest.  In other words, it appears that the Section 211 claim was a bargaining chip designed to gain an advantage in the Plaintiff's buyout negotiations, or at least incidental to that interest.  Further, the bulk of the effort expended here was not to achieve a stockholders meeting.

---

[39] *Full Value Partners, L.P. v. Swiss Helvetia Fund, Inc.*, 2018 WL 2748261, at *7 (Del. Ch. June 7, 2018) (citing *Kurz v. Holbrook*, C.A. No. 5019, at 21–22, 26–27 (Del. Ch. July 19, 2010) (TRANSCRIPT), *aff'd sub nom. EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429 (Del. 2012)).
[40] *EMAK*, 50 A.3d at 433.
[41] *Id*. at 430.

Tellingly, the facts leading inescapably to an order requiring a meeting were stated forthrightly by the *Defendant* at the pleading stage in this matter: Harbor's Answer admitted it had not held a meeting from 2012 through 2018[42] and "that over thirteen months [had] elapsed since its last annual meeting . . . ."[43] In other words, this litigation cannot accurately be characterized as a contest over the stockholders' right to a meeting. The *first page* of Harbor's opening pre-trial brief reads: "Harbor recognizes its obligation to hold an annual meeting for the election of directors and is prepared to proceed with such a meeting at an appropriate time and place."[44] This litigation was not a struggle over whether a meeting of Harbor stockholders was required. Any effort required to achieve a meeting, in other words, was *de minimis*. Under these facts, it would be inequitable to cause the other stockholders to subsidize the Plaintiff's unsuccessful attempt to negotiate a buyout, an action that conferred no benefit to Harbor. The corporate benefit Plaintiff was able to achieve was incidental to his purposes.[45]

---

[42] Def.'s Answ. to the First Am. Verified Stockholder Compl., D.I. 17 ("Answ"), at 31–32.

[43] *Id*. at 32.

[44] Def.'s Pre-Trial Opening Br., D.I. 24, at 1. I note that at trial a dispute did exist over certain details of the annual meeting such as the Plaintiff's request for remote access and a modified quorum requirement. Trial Tr. 47:15–47:18, 49:12–51:5. Of these requests by the Plaintiff, I granted access to Harbor's proxy card for write-in candidates, the remainder were denied. *Id*. at 49:16–49:21. However, no dispute existed over whether a meeting was required under the statute.

[45] To the extent that the Plaintiff seeks fees for other therapeutic benefits, including changes to corporate governance, I find those unrelated to the Plaintiff's purpose in this litigation.

The facts here contrast with *EMAK*, where the plaintiff pursued a benefit for personal reasons that was also beneficial broadly to the class, invoking the common benefit doctrine. Here, by contrast, the Plaintiff's primary purpose would not have benefited Harbor, and the fact that a tactic he employed to pursue that personal benefit resulted in some therapeutic benefit to the entity does not invoke, to my mind, the unjust-enrichment rationale of the doctrine. Therefore, although I assume that the Plaintiff's actions prompted an annual meeting, the Plaintiff is not entitled to fees and expenses on such ground. While this Action vindicated the stockholder franchise, its purpose was a means to a personal pecuniary end, unrelated to the franchise. To the extent the Plaintiff could prevail on his fee request concerning the meeting, it would be only with respect to that *de minimis* part of the litigation effort promoting that end. The Plaintiff has failed to break out such fees in his request, and is accordingly not entitled to an award.[46] Accordingly, the request for fee shifting under the corporate benefit doctrine is denied.[47]

---

[46] *See Peterson Enters., Inc. v. Brace Indus. Contracting, Inc.*, 2020 WL 57156, at *2 (Del. Jan. 6, 2020).

[47] To the extent that the Plaintiff seeks fees in connection with mounting a proxy contest, that request is denied as well. The Plaintiff concedes that the proxy contest was "unsuccessful," but argues that "shareholders are now organized and will continue the campaign for fairness and value." Pl.'s Opening Br., at 4. Promoting a general activism in favor of justice may be admirable: *vive la résistance!* If the result of this litigation was to cause Harbor's stockholders to be among the woke, however, that must serve the Plaintiff as its own reward; it does not in my view warrant a shifting of fees.

The Plaintiff also contends that his "forced disclosure" of certain information from and about Harbor constitutes a corporate benefit. The Plaintiff sought this information to promote the buyout. The Plaintiff pursued his strategy, got the documents, and received the value thereof in pursuit of the buyout; the fact that the Plaintiff was unsuccessful in achieving a sale is not an equitable basis to award fees and expenses on that basis.

It is worth pointing out that nothing in this analysis should be read as calling into question the propriety of the Plaintiff's pursuit of his own interests via this litigation. The question is not whether the litigation was appropriate; it is whether the end advanced was also an end which would have material value to the entity and its stockholders. With respect to the Plaintiff's significant goals here, that answer is no.

Finally, the Plaintiff seeks fees and expenses because of the purported bad faith of Harbor or its counsel. It is quite true that refusal to respond appropriately to a valid books and records demand, and defending against such a demand on frivolous grounds, is vexatious. It is also true that production of books and records in the current corporate litigation environment has taken on increased importance,[48] and that the opportunity and motive to act vexatiously in way of such a valid demand has increased accordingly. This Court should—and I believe will—be vigilant to protect

---

[48] *E.g. Lavin v. West Corp.*, 2017 WL 6728702 (Del. Ch. Dec. 29, 2017).

against oppressive litigation in this regard, including, where appropriate, shifting fees. Having said that, no conduct in this action, to my mind, constituted bad faith, and I likewise deny fees and expenses on that basis.